IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Gary L. Wise, #285074,<br><br>                      Plaintiff,<br><br>        vs.<br><br>Jon E. Ozmint, Director of South<br>Carolina Department of Corrections;<br>Gregory Knowlin, Warden of Turbeville<br>Correctional Institution; Associate<br>Warden, Mr. Cothran; Law Library<br>Clerk, Billy Holiday; Computer Teacher,<br>Genell Ham; Forma IGC, Kenneth<br>Rainwater; Mailroom Clerk, Ms. Hodge;<br>Mailroom Clerk, Ms. Kirby, Individually<br>and in their official capacities,<br><br>                      Defendant. | Civil Action No. 6:09-0153-HFF-WMC<br><br>**REPORT OF MAGISTRATE JUDGE** |

        This matter is before the court on the defendants' and the plaintiff's motions for summary judgment (docs. 40, 55). The plaintiff, a state prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983.

        Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983.

        The defendants filed a motion for summary judgment on May 27, 2009. By order filed May 27, 2009, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure. The plaintiff filed his opposition to the motion and his own motion for summary judgment on June 30, 2009. The defendants filed a reply in support of their motion for summary judgment and in opposition to the plaintiff's motion on July 13, 2009.

The plaintiff filed this action against a number of employees of the South Carolina Department of Corrections ("SCDC") alleging denial of access to the courts by mailroom and law library staff and deliberate indifference to serious medical needs. The events alleged in the complaint occurred during the plaintiff's incarceration in Turbeville Correctional Institution ("TCI"). The plaintiff named as defendants Jon E. Ozmint, the Director of the South Carolina Department of Corrections ("SCDC"); Gregory Knowlin, the Warden of TCI; two Associate Wardens, Ms. Bradshaw and Mr. Cothran; the manager of the law library, Billy Holladay; a computer teacher, Genell Ham; an inmate grievance counselor, Kenneth Rainwater; and two postal directors, Ms. Hodge and Ms. Kirby.

## **APPLICABLE LAW AND ANALYSIS**

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248. Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must provide existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

### *Non-Defendants*

As noted by the defendants, the plaintiff mentions persons named "Alewine" and "Ickes" in the complaint, but he did not caption those persons as defendants. Summonses were not issued for these persons, and they were never served with the complaint. Therefore, any allegations and arguments regarding Alewine and Ickes are irrelevant, and they will be disregarded by the court, as the captioned defendants cannot be held vicariously liable for such claims. *See Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985). Accordingly, the defendants are entitled to summary judgment on all matters involving Alewine and Ickes.

*Deliberate Indifference*

The plaintiff suffers from arteriosclerosis and peripheral vascular disease. He complains that the SCDC did not approve treatment by his preferred outside physician, Dr. Benner. The defendants submitted the plaintiff's medical records as an exhibit to their motion (def. m.s.j., ex. 1, Brenda Dash-Frazier aff., ex. A). Those records show that on September 17, 2008, the plaintiff refused surgery for a femoral artery occlusion because he preferred to see his previous vascular surgeon, Dr. Benner, in Charleston. The plaintiff could have seen Dr. Benner, but at his own expense. If he wanted SCDC to pay for the treatment, he was required to use the surgeon used by SCDC. On October 6, 2008, a note in the records states that the appointment with the plaintiff's preferred outside physician was not approved and that his options were: "use SCDC vascular surgeon or use medical elective care option in which he would pay for any surgeon he wants, or to wait until he is released. At this time he thinks he will wait 14 more months when released." On November 5, 2008, the matter was again addressed when the plaintiff again expressed his desire to see Dr. Benner for vascular surgery, and it was explained to him that "he has the option of getting his own doctor at his own expense or use SCDC vascular surgeon." *Id.*

On February 3, 2009, the matter was again discussed, and the following notes were made to the plaintiff's medical record: "Multiple problems with arteriosclerosis, including [status post myocardial infarction], and [peripheral vascular disease] with recent offer of popliteal repair, but he wants it done at non-authorized facility, namely Trident. He currently will have to think about going back to Tuomey." From September 17, 2008, to February 3, 2009, plaintiff's medical chart entries include 27 "encounters," including four discussions in which the plaintiff was offered the surgery he needed but declined to have it done at the facility and by the surgeon offered by SCDC. *Id.*

The plaintiff alleges that the defendants were deliberately indifferent to his serious medical needs. As pointed out by the defendants, no defendant is a nurse or

4

physician, and none of the defendants are alleged to have any involvement in the plaintiff's medical care. The doctrine of *respondeat superior* generally is inapplicable to § 1983 suits. *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978); *Vinnedge v. Gibbs*, 550 F.2d 926, 928-29 (4th Cir. 1977). The plaintiff must establish three elements to hold a supervisor liable for a constitutional injury inflicted by a subordinate: (1) the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to people like the plaintiff; (2) the supervisor's response was so inadequate as to constitute deliberate indifference or tacit authorization of the subordinate's conduct; and (3) there is an "affirmative causal link" between the supervisor's inaction and the plaintiff's constitutional injury. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir.), *cert. denied*, 513 U.S. 813 (1994). The plaintiff has failed to show any basis for supervisory liability.

Furthermore, the plaintiff's claim fails on the merits. Deliberate indifference by prison personnel to an inmate's serious illness or injury is actionable under 42 U.S.C. § 1983 as constituting cruel and unusual punishment contravening the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104-105 (1976). The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Id.* at 102. This obligation arises from an inmate's complete dependence upon prison medical staff to provide essential medical services. *Id.* The duty to attend to prisoners' medical needs, however, does not presuppose "that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. To establish that a healthcare provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. *See Rogers v. Evans*, 792 F.2d 1052, 1058 (5th Cir. 1986). "Deliberate indifference is a very high standard – a

5

showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999).

In order to establish that he has been subjected to cruel and unusual punishment, the plaintiff must prove that the deprivation of a basic human need was, objectively, sufficiently serious and that, subjectively, the officials acted with a sufficiently culpable state of mind. *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir.1993)(quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). What suffices as a serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). Courts have traditionally attempted to avoid intervening and dictating the medical care of prisoners. As noted by the Fourth Circuit, courts should "disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment. . . .[which] remains a question of sound professional judgment." *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977).

With respect to the subjective component of deliberate indifference, while an "express intent to inflict unnecessary pain is not required . . . [i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the cruel and unusual punishment clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Mere disagreement between an inmate and a physician over the appropriate form of treatment is not an actionable constitutional claim. *Wright v. Collins*, 766 F2d 841, 849 (4th Cir. 1975).

The essence of the plaintiff's complaint is that he believes he should have been able to go to the surgeon of his choice for treatment. At most, the plaintiff had a disagreement with medical staff as to the proper treatment of the conditions alleged in the complaint. However, negligence or malpractice in medical services does not create a constitutional cause of action. *See Wright*, 766 F.2d at 849. The plaintiff's allegations do

6

not rise to the level of a constitutional violation. The plaintiff does not have the luxury of choosing his own surgeon and facility at the SCDC's expense. It is apparent from the plaintiff's medical records that his care has not been neglected, and he certainly has not been subjected to deliberate indifference in his medical care. Accordingly, the defendants are entitled to summary judgment on this claim.

***Access to Courts***

The plaintiff claims that the defendants improperly read his legal mail and failed to grant him sufficient law library and mailroom access. The United States Constitution guarantees prisoners the right of meaningful access to the courts. *Bounds v. Smith*, 430 U.S. 817 (1977). In *Bounds*, the Supreme Court held that the right of access imposes an affirmative duty on prison officials to assist inmates in preparing and filing legal papers, either by establishing an adequate law library or by providing adequate assistance from persons trained in the law. *Id*. at 828. In *Lewis v. Casey*, 518 U.S. 343, 349 (1996), the Supreme Court held that a prisoner must show some actual injury resulting from a denial of access in order to allege a constitutional violation. This requirement can be satisfied by demonstrating that a non-frivolous legal claim was frustrated or impeded by some actual deprivation of access. *Id.* at 352-53. A claim for failure to provide access to the courts must be pleaded with specificity. *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996).

The evidence shows that the plaintiff demands unfettered, constant law library and mailroom access. Defendant Billy Holladay, the manager of the law library at TCI, testified that each housing unit has a law library schedule, with a scheduled time at which the inmates may appear to do their research. If an inmate has a legal deadline and cannot wait until his library day, or if he needs extra library time to meet a deadline, the inmate is to submit a Request to Staff Member, which then causes the inmate to be issued an Order

7

to Report at a time other than his usual day. The inmate must bring his deadline to the staff to show the urgency of his request. According to defendant Holladay, the plaintiff persists in failing to follow this procedure. He has repeatedly demanded additional or earlier library times, but he has been uncooperative in showing a deadline to justify his requests. Defendant Holladay further testified to the dates the plaintiff signed in to use the library between August 21, 2009, and December 2008. A review of that list shows that the plaintiff used the library approximately two days per week during that time period. Additionally, Holladay testified that it is probable the plaintiff used the law library at other times during that time period as he persists in not signing in as required unless he is confronted and directed to do so (Holladay aff.).

Defendants Evelyn Hodge, the Postal Director II at TCI, and Susan H. Kirby, the Postal Director I at TCI, both testified that each housing unit has a mailroom day, with a scheduled time at which the inmates may appear to copy and mail their items. If an inmate has legal mail to pick up, he is issued an Order to Report, which may require him to appear on a different day than his usual mail day. Ms. Hodge and Ms. Kirby testified that voluminous copies can disrupt the schedules of other inmates. If an inmate has a legal deadline and cannot wait until his mailroom day, or if he has voluminous copies to make, the inmate is to submit a Request to Staff Member, which then causes the inmate to be issued an Order to Report at a time other than his usual mailroom day. The inmate must come prepared to show the deadline to the mailroom staff. Ms. Hodge and Ms. Kirby testified that the plaintiff persists in not following the procedure. He repeatedly demanded additional or earlier mail times, but he has been uncooperative in showing a deadline to justify his requests (Hodge aff.; Kirby aff.).

As argued by the defendants, the plaintiff's own frequent and voluminous filings in this case, as well as his other filings in both state and federal court cases, are an indication that the plaintiff has been afforded copies and mailing, as well as sufficient law

8

library access. The plaintiff seeks access to the mailroom and law library on his own terms and his own schedule. That is not the plaintiff's right.

Furthermore, the plaintiff has not shown that he has been hindered in his efforts to pursue a nonfrivolous legal claim. The plaintiff claims that his lack of law library access and/or mailroom services caused him to lose his case in the South Carolina Supreme Court. His argument is unpersuasive. The plaintiff was granted a belated appeal from Judge Breeden's denial of his post-conviction relief ("PCR") application. The plaintiff's appointed counsel asserted the petition from Judge Breeden's order was without merit and requested permission to withdraw from the representation. The Supreme Court reviewed the entire record of plaintiff's action pursuant to *Johnson v. State*, 364 S.E.2d 201 (S.C. 1988), denied the petition for writ of certiorari, and granted counsel's request to withdraw (comp., ex. 8). The Supreme Court's decision constitutes a decision by South Carolina's highest court that plaintiff's PCR application lacked merit.

The plaintiff later missed a deadline for filing a petition for rehearing, which was required to be received by the South Carolina Supreme Court by December 19, 2008 (comp. ex.11). According to other documents attached to the complaint, the plaintiff complains that he was allowed a library pass from December 15 through December 18 to conduct his research, and he asserts the four days were not sufficient, but he does not specify how much additional time he needed or why additional time was needed. As argued by the defendants, a petition for rehearing of denial of a writ of certiorari would not have given the plaintiff an opportunity to present new arguments to the South Carolina Supreme Court, as the petition for rehearing is limited to the raising of "points supposed to have been overlooked or misapprehended by the court." SCACR 221.

As to his purported medical lawsuits, the plaintiff has not cited one legal action that was dismissed through any conduct of any defendant. At best, plaintiff "hints" at medical claims he might have pursued, falsely claiming he was denied "any chance to ...

9

properly present his meritorious medical claims" (comp. 5-6). The plaintiff attaches to the complaint a "declaration," in which he discusses his theories of the supposed origins of his heart attack in 2002 and assesses blame against various SCDC employees. Contrary to his alleged denial of an opportunity to litigate these claims, the plaintiff has already done so in two courts:

> (1) In the Court of Common Pleas for Dorchester County, South Carolina, in the matter of *Gary L. Wise v. South Carolina Department of Corrections*, case no. 2003-CP-18-1893, the SCDC was granted summary judgment on January 11, 2005, and the plaintiff's appeal was dismissed (def. m.s.j., ex. 2).
>
> (2) In federal court, in *Gary L. Wise v. Eileen Judson Palmer, et al*, case no. 6:04-1752-CMC-WMC, the defendants (various SCDC employees) were granted summary judgment on April 28, 2006, which was affirmed by decision the Fourth Circuit Court of Appeals.

In both the state and federal cases, the plaintiff alleged SCDC employees failed to prevent his heart attack and to give proper medical care. As for any new medical complaints, as set forth above, the plaintiff has been provided appropriate medical care. Thus, the plaintiff cannot establish that any meritorious medical complaint has been dismissed as a result of any conduct of any defendant denying him access to the courts.

The plaintiff attaches to his complaint a Request to Staff Member form in which he vaguely complains of not being allowed to mail out legal mail any and every day. The response on the form, from Ms. Hodge, simply directs that if the plaintiff has a deadline requiring mail access earlier than his assigned day, he is to write a request in which he states the deadline date, and he is to bring proof of the deadline on the day he is summoned to the mailroom (comp., ex. 2). Defendants Kirby and Hodge testified similarly in their affidavits discussed above.

As against defendant Holladay, the plaintiff alleges that, by reading a court order to determine a legal deadline, Mr. Holladay improperly read his legal mail. Reading

10

a court order to determine a deadline date does not equate with reading the plaintiff's legal mail. No confidences are revealed by reading a court order. Moreover, at the conclusion of that encounter, according to the Request to Staff Member attached to the plaintiff's complaint, Mr. Holladay gave the plaintiff a law library pass providing for five straight days of law library access to perform his research. The plaintiff then said he could not avail himself of one of the days, and four days was not sufficient (comp., ex. 4). Again, no deprivation of access to the courts is demonstrated by that encounter, and no deadline is specifically alleged to have been missed.

As against defendant Ham, the plaintiff complains of Ms. Ham not granting him sufficient library access to deal with a 15-day response period in the South Carolina Supreme Court, but he then says she gave him a four-day library pass. He alleges insufficient library access time caused the denial of meritorious medical claims, but the time of the event more accurately coincides with the ending of his PCR pursuit. In either case, however, the plaintiff cannot show a meritorious claim was ended by any wrongful conduct of any defendant as discussed above.

The plaintiff attaches to his motion for summary judgment an affidavit (with attachments) of inmate Joseph Davis. Davis's affidavit, however, does not support the plaintiff's action. First, Davis's experiences with mailroom or library staffers are irrelevant to the plaintiff's action. Furthermore, Davis's affidavit establishes the mailroom staff responded to his request for mail and copy services by allowing him those services on the day he requested them. Davis's affidavit further shows his own abuse of the procedure by using "legal mail" access to create blanket mailings to numerous newspapers instead of for legal purposes, misconduct for which Davis was apparently charged and punished (def. m.s.j., ex. 3, Davis aff.). The affidavit simply does not establish any unreasonableness or improper behavior on the part of the mailroom staff.

11

Likewise, the affidavits of inmates Bruce Richardson and Marvin Rogers do not assist the plaintiff's case. Each of the affidavits states that the plaintiff asked the other inmate to take his court order to the library for him and to request for him a library pass. The affidavits thus show the plaintiff did not request, for himself, library access. The affidavits bear attachments concerning disciplinary charges against Richardson and Rogers arising from their alleged possession of contraband legal forms, which are wholly irrelevant to this action.

The plaintiff's cannot rely on conclusory allegations. *See Cochran*, 73 F.3d at 1316. He has not specified how his allegedly insufficient library and mailroom time have caused him to miss a specific deadline and suffer harm. Accordingly, the plaintiff's claim for denial of access to the courts fails.

***Grievances***

The plaintiff's complaint contains no allegations against defendant Rainwater, but he attaches a Request to Staff Member form in which he says Rainwater "refuse to answer any grievance I send in to the grievances office ..." (comp., ex. 8). The plaintiff does not allege any specific grievance was unanswered, nor does he specify the content and subject matter of the grievance. The response to the Request to Staff Member form notes certain pending grievances in the Central Office level, and that a final agency response will be forthcoming. The plaintiff's pleading is impermissibly vague, even with the liberal construction allowed a *pro se* plaintiff. There is no constitutional right to a grievance procedure. *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Further, the other defendants cannot be held liable for any complaints about Rainwater, and no grievance-related claims are made against those other defendants, who cannot be vicariously liable for such claims. *See Wright,* 766 F. 2d at 850.

*Personal Involvement*

The plaintiff makes no allegations of personal involvement by defendants Ozmint, Knowlin, Bradshaw, or Cothran, in any conduct that constitutes a violation of constitutional rights. As against Ozmint, the Director of SCDC, the plaintiff alleges he is "legally responsible for the overall operation of the department and each institution ... ." Similarly, as to Knowlin, the plaintiff alleges he is "legally responsible for the operation of TCI and for the welfare of all the inmates of that prison." Defendants Bradshaw and Cothran are alleged to be Associate Wardens of TCI. As discussed above, the doctrine of *respondeat superior* generally is inapplicable to § 1983 suits. *See Wright*, 766 F.2d at 850. Further, the plaintiff has failed to show any basis for supervisory liability. *See Shaw*, 13 F.3d at 799.

## **CONCLUSION AND RECOMMENDATION**

Based upon the foregoing, it is recommended that the defendants' motion for summary judgment (doc. 40) be granted and the plaintiff's motion for summary judgment (doc. 55) be denied. All pending nondispositive motions will be held in abeyance pending the district court's disposition of the motions for summary judgment. Should the district judge adopt this court's recommendation, these motions will be rendered moot.

s/William M. Catoe
United States Magistrate Judge

August 26, 2009

Greenville, South Carolina

13