

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| GARY L. WISE,<br>　　　Plaintiff,<br><br>vs.<br><br>JON E. OZMINT, GREGORY KNOWLIN,<br>MS. LINDA BRADSHAW, MR. RICHARD<br>COTHRAN, BILLY HOLIDAY, MS.<br>GENELL HAM, KENNETH RAINWATER,<br>MS. EVELYN HODGE, MS. SUSAN KIRBY,<br>　　　Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 6:09-153-HFF-WMC |

## ORDER

This case was filed as a 42 U.S.C. § 1983 action. Plaintiff is proceeding pro se. The matter is before the Court for review of the Report and Recommendation (Report) of the United States Magistrate Judge suggesting that Defendants' motion for summary judgment be granted and Plaintiff's motion for summary judgment be denied. The Report was made in accordance with 28 U.S.C. § 636 and Local Civil Rule 73.02 for the District of South Carolina.

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). The Court is charged with making a de novo determination of those portions of the Report to which specific objection is made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

The Magistrate Judge filed the Report on August 26, 2009, and the Clerk of Court entered Plaintiff's objections to the Report on September 14, 2009. On September 30, 2009, Defendants filed a response to Plaintiff's objections, following a request by the Court.

Plaintiff, a frequent filer of lawsuits with the Court, filed this action against the warden and numerous employees of Turbeville Correctional Institution (TCI), alleging, among other things, that prison officials have shown deliberate indifference to his medical needs and have denied him access to the courts. The Magistrate Judge discussed these claims and the others raised by Plaintiff and concluded that Defendants were entitled to summary judgment.

In response to the Report, Plaintiff filed thirty-five pages of objections, consisting largely of general statements of legal principles and conclusory allegations. Specific objections are necessary to focus the Court's attention on disputed issues. *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985) (requiring specific objections to a magistrate judge's report to enable district court judges to focus on disputed issues and to prevent "sandbagging" of district judges by litigants who fail to object and then appeal). Because general objections to the Magistrate Judge's Report do not direct the Court's attention to any specific portion of the Report, they are tantamount to a failure to object. *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991) ("A general objection to the entirety of the magistrate [judge]'s report has the same effects as would a failure to object.").

Despite the inclusion of mostly conclusory statements, Plaintiff's response to the Report contains a few specific objections. These will be considered first. Plaintiff also objects to the general handling of his case by the Magistrate Judge, and this will be considered second. Finally, the Objections are intertwined with several allegations that were not included in the Complaint, and, thus, not addressed by the Magistrate Judge. Those are also discussed below.

## A. Specific Objections to the Report

Early in the Report, the Magistrate Judge recommended granting summary judgment against two individuals who were mentioned in the Complaint but not named as Defendants. Plaintiff objects to the Magistrate Judge's suggestion to dismiss any claims against Dr. Alewine and Mr. Ickes because he alleges that these people harmed him. (Pl.'s Objections 12.) However, he fails to explain why these alleged wrongdoers were not added as defendants nor does he explain how the named Defendants might be vicariously liable for their actions. To the extent Plaintiff now seeks to amend his Complaint to add these individuals as defendants, this request is denied because the new allegations in his Objections fail to allege sufficient facts upon which relief can be granted. Thus, this objection is without merit.

Next, Plaintiff challenges the Magistrate Judge's determination that his deliberate indifference claim lacks merit. (Pl.'s Objections 5, 13.) He insists that he is suffering from severe medical conditions and that he should be allowed to see Dr. Benner, his previous vascular surgeon in Charleston. However, as discussed in the Report, Plaintiff, a state prisoner, has no right to the surgeon of his choice. *See Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988) ("Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice."). Having reviewed the medical records submitted in this case, the Court agrees with the Magistrate Judge that Plaintiff was advised on several occasions that he could be treated for free by a South Carolina Department of Corrections' (SCDC) surgeon or he could pay to see Dr. Benner. Plaintiff indicated that he does not trust the SCDC surgeon and that he would prefer to wait until he was released from prison before undergoing surgery. (Defs.' Mot. for Summ. J. Ex. A at 9; Pl.'s Objections 28.) As Plaintiff has

opted to forego treatment by the SCDC surgical staff, his objections to the deliberate indifference portion of the Report are without merit.

Plaintiff's specific objections focus largely on various aspects of his denial of access to courts claim. In his Complaint, Plaintiff alleges that certain Defendants read his legal mail and failed to grant him sufficient access to the law library and prison mailroom, resulting in his denial of access to the Courts. (Pl.'s Compl. 8, 11.) Specifically, Plaintiff complains that he missed the deadline to file his petition for rehearing after the South Carolina Supreme Court denied his petition for certiorari in his state post-conviction-relief action. (Pl.'s Compl. 6, 8.) In his Objections, Plaintiff reiterates this argument. (Pl.'s Objections 21-22.) However, for the reasons discussed on pages nine through eleven of the Report, Plaintiff's argument regarding his access claim is without merit.

Plaintiff also provides an additional argument in support of his denial of access to court's claim. This argument was first raised by Plaintiff in his pre-trial motion for a temporary restraining order (TRO). Plaintiff argues that TCI has a policy of limiting mailroom and law library access that is inconsistent with the regulations of the SCDC. Specifically, Plaintiff alleges that TCI's policies are inconsistent with Policies "OP 22.14," "P.S. 10.08," and "G.A. 01.03." OP-22.14 is an operations manual entitled "Inmate Disciplinary System." (Docket Entry 77.) Because Plaintiff relies on it primarily to support his newly asserted retaliation claim, it will be considered below. PS-10.08 is titled "Inmate Correspondence Privileges." (Docket Entry 77.) On page twenty-two of his Objections and throughout his Reply in support of his motion for a TRO, Plaintiff maintains that the mailroom staff violated these regulations by failing to keep the mailroom open for more than an hour a day, resulting in the denial of access to the courts. GA-01.03 regulates prison law libraries, and,

4

Plaintiff cites this program manual to further support his claim that Defendants have failed to give him sufficient time in the law library.

To begin, the Court notes that prison regulations are not designed to confer rights or benefits on inmates, but they are "primarily designed to guide correctional officials in the administration of a prison." *Sandin v. Conner*, 515 U.S. 472, 481-82 (1995). Moreover, the Fourth Circuit has stated that "courts are not in the business of running prisons" and that considerations of prison management are properly "weighed by the legislature and prison administration rather than a court." *Taylor v. Freeman*, 34 F.3d 266, 269 (4th Cir. 1994) (citations omitted).

To the extent Plaintiff is attempting to bolster his original denial of access to the court's claim by pointing to the prison regulations, these regulations add little to Plaintiff's argument that he has been denied meaningful access to the Courts. As noted above, Plaintiff's original claim was based on his inability to file a petition for rehearing in the South Carolina Supreme Court. The Court agrees with the Magistrate Judge that Plaintiff was given sufficient time in light of the type of motion he was attempting to prepare.[1] Thus, this objection is without merit.

To the extent Plaintiff is attempting to supplement his Complaint to add a claim of denial of access to courts based on conduct in this case, his numerous, lengthy, and timely filings indicate that he has been given a significant amount of access to both the prison law library and mailroom. As Plaintiff fails to show some actual injury resulting from denial of access to the courts, his assertion that he has been denied access in this case is without merit. *See Lewis v. Casey*, 518 U.S. 343, 351 (1996) ("Insofar as the right vindicated by *Bounds* is concerned, 'meaningful access to the courts

---

[1] Plaintiff admits that he was given four days and twelve hours to prepare his response to the South Carolina Supreme Court's denial of certiorari. (Pl.'s Objections 21-22.)

is the touchstone,' [citation omitted], and the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim.").

To summarize, Plaintiff's specific objections to the Report are without merit.

*B.     General Objections to Magistrate Judge*

In addition to his specific objections to portions of the Report, Plaintiff also objects to the general handling of his case by the Magistrate Judge.

Specifically, Plaintiff asked that Magistrate Judge Catoe "be removed from" adjudicating any of his cases. He cites 28 U.S.C. § 636(c)(1) for the proposition that parties must consent to adjudication by a magistrate judge. That provision gives magistrate judges additional adjudicatory powers where the parties consent. However, §§ 636(a) and (b) give magistrate judges the authority to do what the Magistrate Judge did in this case: prepare a report and recommendation for this Court to consider. Moreover, under the local rules of this district, referral of pretrial matters to a magistrate judge is automatic in lawsuits such as this one brought by a prisoner in state custody. *See* Local Civil Rule 73.02(B)(2)(d) (noting that Clerk of Court shall assign magistrate judges all pretrial proceedings in prisoner complaints brought under 42 U.S.C. § 1983). Moreover, as noted above, the Court has conducted a de novo review of the portions of the Report that were objected to. Thus, Plaintiff's argument that he never consented to adjudication by Magistrate Judge Catoe is meritless.

Plaintiff also points out that the Magistrate Judge failed to consider several other motions he filed in this action, including two motions for a Temporary Restraining Order (TRO). However, the Magistrate Judge did consider these motions in the Report when he noted, "All pending nondispositive motions will be held in abeyance pending the district court's disposition of the

motions for summary judgment. Should the district judge adopt this court's recommendation, these motions will be rendered moot." (Report 13.) Furthermore, this Order addresses both directly and indirectly the primary issues raised in those pre-trial motions, including the prison regulations alleged to have been violated by Defendants and Plaintiff's newly asserted retaliation claim.

C. *Retaliation Claim*

In a theme that runs throughout his Objections, Plaintiff alleges that he "is being illegally attacked by a planned series of disciplinary actions in retaliation for Mr. Wise filing a civil action against correctional officials." (Pl.'s Objections 13-14.) Although it is not entirely clear from Plaintiff's Objections what events form the basis of his retaliation claim, after carefully reviewing other documents filed by Plaintiff and after considering Defendants' response to Plaintiff's Objections, it is clear that Plaintiff is referring to disciplinary action against him arising out of two incidents. The first occurred on July 16, 2009. Plaintiff alleges that his canteen privileges were suspended for forty-five days "for making and paying for 120 copies." (Pl.'s Mot. for TRO 4.) This sanction was imposed for violation of SCDC Policy OP-22.14, "Offense 847–Abuse of Privileges." (Pl.'s Objections 32.) The second event occurred on August 26, 2009. Plaintiff alleges that ten days of good time credits were taken from him in response to his request for an extra pair of sheets. (Pl.'s Objections 6.)

Construed liberally, Plaintiff is seeking to supplement his Complaint to add a claim for retaliation based on conduct that occurred after this lawsuit was filed. Such amendments are permissible "on motion and reasonable notice. . . [and] on just terms." Fed. R. Civ. P. 15(d). The Fourth Circuit has noted that the standard for evaluating Rule 15(d) motions is "nearly identical" to the standard for evaluating Rule 15(a) motions. *Franks v. Ross*, 313 F.3d 184, 198 n.15 ("In

7

either situation, leave should be freely granted, and should be denied only where 'good reason exists . . . such as prejudice to the defendants.'") (citation omitted).

As to the first incident relating to mailroom copies, the Court will grant Plaintiff's request and will treat his Complaint as supplemented. This supplemental pleading will include the addition of three new individuals as Defendants.[2] Construed liberally, Plaintiff made his request to supplement his pleadings in the form of a motion previously filed with the Court. (Pl.'s Mot. Requesting Fed. R. Civ. Proc. 15 Amendment 5.) Defendants have had at least three opportunities to respond this retaliation claim–first, through the internal prison grievance process, second, in response to Plaintiff's motion, and, finally, in their response to Plaintiff's Objections. Thus, the Court finds that Defendants will not be prejudiced by consideration of Plaintiff's retaliation claim as it relates to the July 16, 2009, mailroom incident. The merits of this retaliation claim will be considered below.

However, as to the second incident relating to bed sheets, the Court will deny Plaintiff's request to supplement his pleadings to add a new claim and additional defendants. First of all, even

---

[2]In his Objections, Plaintiff moved to add as defendants Major Sharp, who charged him with abuse of privileges, Angela Brown, who was the hearing officer, and Officer Goodel, who processed the paperwork. (Pl.'s Objections 6.) On August 19, 2009, Plaintiff also tried to add these individuals as defendants in an amended complaint filed in another lawsuit pending before the Court, 6:09-1376-HFF-WMC. Based on his amended complaint, Judge Catoe ordered these three individuals added as Defendants in 6:09-1376. Subsequently, Plaintiff filed a motion to correct this "clerical error," indicating that the three individuals should have been added as Defendants in this case. The Court previously granted that motion to the extent the three individuals were terminated from case number 6:09-1376. As the Court is now considering Plaintiff's retaliation claim against these three individuals, they will need to be added as Defendants to this case. However, as discussed herein, the allegations against them are subject to summary dismissal based on an initial screening of the supplemental pleadings conducted pursuant to 28 U.S.C. §§ 1915, 1915A. Therefore, the Clerk of Court shall not issue the summonses or forward this matter to the United States Marshal for service of process.

construed liberally, Plaintiff failed to make this request in the form of a motion as required by Rule 15(d). Second, Plaintiff failed to exhaust his administrative remedies related to his bed sheet grievance. *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under [42 U.S.C. 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). According to the information submitted by Plaintiff, the bed sheet incident was resolved administratively on August 31, 2009, with Plaintiff receiving ten days of canteen and telephone restrictions based on his conduct. (Pl.'s Objections Ex. 5.) Plaintiff signed a form acknowledging that he accepted the sanction and that he waived his right to appeal the decision and have the matter referred to a disciplinary panel. (Pl.'s Objections Ex. 5.)[3] The Fourth Circuit has made clear that "to be entitled to bring suit in federal court, a prisoner must have utilized all available remedies 'in accordance with the applicable procedural rules,' so that prison officials have been given an opportunity to address the claims administratively." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (citation omitted). Here, Plaintiff opted not to take his claim to a disciplinary hearing, and, thus, he failed to exhaust all of his available administrative remedies before seeking to supplement his Complaint. Therefore, Plaintiff's request to add a retaliation claim based on conduct involving his bed sheets is denied.

The Court will now turn to the merits of Plaintiff's first retaliation claim based on the suspension of his canteen privileges for allegedly abusing his copy machine privileges. According

---

[3]On the same day his sanction was imposed, Plaintiff completed a "Request to Staff Member" addressed to Defendant Warden Knowlin complaining of his sanction. At the time Plaintiff signed his Objections, only eight days later, Defendant Warden Knowlin had yet to respond to Plaintiff's request.

to Defendants, Plaintiff requested four sets of copies for immediate mailing to the Clerk of Court in Richland County. (Defs.' Resp. to Pl.'s Objections 2.) Although it was not Plaintiff's allotted time to use the copy and mail room, prison staff made the copies for him.[4] Upon making the copies, they were stamped on the back with the words "mail room." Plaintiff complains that the mailroom stamp bled through to the front of the paper.[5] (Pl.'s Motion for TRO 2.) When Plaintiff mailed only a portion of the copies, one of the staff members filed an Incident Report, asserting that Plaintiff was abusing his privileges in violation of SCDC Policy OP-22.14. According to Plaintiff, he made the extra copies because he needed extra paper. (Pl.'s Mot. for TRO 4.)

To state a claim for retaliation, "plaintiffs must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Moreover, the Court precedes from the position that "[i]n the prison context, we treat [retaliation] claims with skepticism 'because every act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct.'" *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (citation omitted).

---

[4]Interestingly, though Plaintiff complains about how his copies were handled by TCI staff, prison officials went above and beyond the regulations by providing Plaintiff with multiple copies of his court filings. *See* SCDC Policy GA-01.03 § 13.2 (noting documents that will not be copied include "documents that have been solely originated, generated, written, typed, or created by an inmate (the inmate may copy this information by hand)").

[5]To the extent Plaintiff bases his retaliation claim on this conduct, the Court finds this argument to be without merit and contradicted by the numerous clean and legible documents he has filed in this lawsuit.

Viewing Plaintiff's retaliation claim with a skeptical eye, the Court finds that it is without merit and should be dismissed.[6] First of all, Plaintiff admits that he requested 120 copies, and he admits that he never planned on mailing them all to the Clerk of Court, intending instead to write on the back of some of the copies for other purposes. *See* Pl.'s Mot. for TRO 2 ("Mr. Wise only receives four sheets of paper a month. Mr. Wise was force [sic] to improvise."). Second, the three individuals that Plaintiff alleges retaliated against him were not named as Defendants at the time Plaintiff asserted his retaliation claim. Plaintiff fails to explain why these individuals would have retaliated against him when he had yet to name them as Defendants. The Court is hesitant to interfere with the internal workings of TCI, especially when it comes to prison discipline. *See Plyler v. Evatt*, 846 F.2d 208, 212 (4th Cir. 1988) ("[F]ederal courts have traditionally adopted a policy of judicial restraint in the problematic area of prison administration."). Moreover, the Court is unwilling to second guess the appropriateness of a sanction arising from Plaintiff's request for copies that he admittedly sought under false pretenses.

Plaintiff also attempts to assert a conspiracy claim arising out of the same conduct as his retaliation claim. He alleges that various Defendants conspired together to punish him in violation of 42 U.S.C. § 1985 and § 1986. (Pl.'s Objections 14-15; Pl.'s Mot. for TRO 5.) However, Plaintiff's allegations are conclusory and do little more than recite the statutory language alleged to have been violated. This claim is meritless, unsupported by the record, and, thus, for the reasons stated above, subject to dismissal.

Plaintiff's remaining objections and accusations against the Court are without merit.

---

[6]This dismissal is based on 28 U.S.C. § 1915(e)(2)(B), which allows a court to dismiss an in forma pauperis proceeding where a Plaintiff "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

After a thorough review of the Report and the record in this case pursuant to the standard set forth above, the Court overrules Plaintiff's objections, adopts the Report to the extent it is not inconsistent with this Order and incorporates it herein. Therefore, it is the judgment of this Court that Defendants' motion for summary judgment be **GRANTED** and Plaintiff's motion for summary judgment be **DENIED**.

For the reasons stated above, Plaintiff's "Motion Requesting a Fed. R. Civ. Pro. 15 Amendment"[docket entry 61] is **GRANTED** as it relates to supplementing his pleadings and adding a retaliation claim based on his abuse of process sanction and **DENIED** as it seeks relief pursuant to Rule 65.

Plaintiff's pending Motion for a Temporary Restraining Order [Docket Entry 66] deals almost exclusively with Plaintiff's retaliation claim considered above. As the Court has rejected the merits of that claim, this motion is **MOOT**.

Plaintiff's "Rule 7(b) Motion" [Docket Entry 57] is **DISMISSED**, as it appears to be nothing more than an appendix to Plaintiff's motion for summary judgment.

**IT IS SO ORDERED**.

Signed this 6th day of October, 2009, in Spartanburg, South Carolina.

s/ Henry F. Floyd
HENRY F. FLOYD
UNITED STATES DISTRICT JUDGE

*****
## NOTICE OF RIGHT TO APPEAL

The parties are hereby notified of the right to appeal this Order within 30 days from the date hereof, pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.